With United States v. Alsenat, Mr. Stoes. Good morning, I'm Teron Stoes, Assistant Federal Public Defender. And I have the privilege of representing the appellant Mr. Maxon Alsenat. May it please the court. Mr. Alsenat was convicted of merely possessing a machine gun. Now I'd imagine that most folks hear machine gun and clutch their pearls. But let me be clear. What we're talking about here is a machine gun conversion device, or MCD. And MCD is typically no bigger than the tip of your thumb, a small piece of metal or plastic. And it attaches to the back of, say, a semi-automatic handgun. And then that handgun can fire automatically. That is, more than one shot without reloading and with a single function of the trigger. So in other words, an MCD… It's referred to as a machine gun conversion device, right? That's right, Your Honor. But the point is that it enables quicker fire. So as the Seventh Circuit put it, MCDs make small arms, quote, for elderly householders and others who are too frightened to draw a careful bead on an intruder. That's all this case is really about, as at least applied to Mr. Alsenat. And against those facts, including that he wasn't alleged of firing a thousand rounds per minute or… Now, I understand that you've made a challenge that is as applied after your client pleaded guilty. But it's really kind of a quasi-as-applied challenge, as I understood it, that what really enables you to make that kind of challenge after pleading guilty is that you're not challenging any kind of facts that are in dispute here. As I understood it, your argument was that applying it to your client, who's a citizen and a non-felon, those are undisputed facts in the record, that you're able to challenge the constitutionality of this prohibition. But not him being elderly or all these other facts that you're now mentioning. Am I missing something? No, Your Honor, but what I'm just saying is, and I believe courts around the nation sort of fell into this trap, is they hear machine gun and they think of one thing and one thing only, and that's some massive object that's capable of holding a… Here's the concern I have about this, is the statute says machine gun, right? And so the way that this is regulated is the conversion device is regulated as if it were a machine gun. So the question for us, I think, given your challenge to the statute, is just about machine guns generally, not the conversion device? Or how do you see that? As to the Chief Judge's question, that as applied really is the machine gun conversion device and really what it's capable of being attached to. And then as to the machine gun, generally speaking, that's when we start to get into the facial challenge that we also raise. If we were to look at it that way in a specific – I guess I'm not sure whether you're – let me ask you this. I'm not sure whether the guilty plea allows you to raise a challenge that's specific to the machine gun conversion device given that the statute just says machine gun. What do you say about that? Well, because machine gun, as defined under the National Firearms Act, is incorporated into 922-0. So I think if we're talking about an as applied, we do have to look at that as incorporated by reference into 922-0. Yeah, but how – and maybe I'm missing something, but given the guilty plea here, how can you make this as applied challenge specific to the machine gun conversion device that would be separate from a facial challenge as to the statute? Because the indictment itself alleged the machine gun conversion device, not just machine gun. If we were to look at the machine gun conversion device, how would that be an arm? I apologize, Your Honor. Because Bruin and Heller said that, generally speaking, an arm is a weapon of offense. They go on to say that it also includes not just whatever existed at the time of ratification in 1791, but modern innovations. And then Bruin at 28 further says that that general definition necessarily includes modern instruments that facilitate self-defense. And so facilitate just means making something easier. And because the MCD, when attached to a semi-automatic firearm, such as a Glock 17, allows for quicker firing of the 17 or 19 rounds that it can hold, that necessarily is making self-defense easier. And that goes back to the original point about the elderly person. They may not have the best James Bond-type aim, but at least with a quick swipe they'd be able to cover a little bit more ground faster than their intruder. My understanding, though, was that your argument was that banning the possession of machine guns, regardless of whether this is a machine gun conversion device, because under federal law it's defined for purposes of the ban as a machine gun, that that violates the Second Amendment. Right. So I'm sorry. Isn't that your argument? Right. So now we take off the as applied, put on the facial challenge. I thought the as applied portion, again, not challenging anything that's in dispute, what could be in dispute in the record, was because he's a citizen, he's a non-felon, your argument was banning his possession of a machine gun. Well, it's also – Related to the Second Amendment. Again, the indictment actually alleged machine gun conversion device. And so, yes, we talked about those things because, for example, again, I think courts have thought, well, a machine gun is somebody standing there for a full minute just holding the trigger down and spewing 1,000 rounds. But we're talking about a machine gun conversion device that isn't going to be attached to another machine gun. It's going to be attached to a semi-automatic firearm. That allows it to function as a machine gun. One, I think Judge Brasher – I'm not sure if you fully answered his question because I, too, am struggling with the distinction between as applied, given the guilty plea, and a facial challenge, which perhaps you are able to raise. And I'm also struggling with what is, then, in your belief, the distinction between an accessory and an essential component? Because you started out saying we're talking about a machine gun, and then you went for a long time describing how you convert it into a machine gun. So, number one, if you can still just tease out a little bit the distinction between the as applied and facial in terms of the as applied being properly before us, and then, two, the distinction between the accessory and an essential component. So, facially, we can talk about how perhaps something that can fire 1,000 rounds or a traditional machine gun would be protected. But it also goes down to the lowest common denominator, which is MCD. You put on to a Glock that can only hold 19 rounds and, therefore, can only spew out 19 rounds. Our argument, facially, covers the entire – runs the entire gamut of that. As applied, because he was charged – Before you go on, that would require you to prove that it's unconstitutional in all applications. That's right. That's right. Okay. Go ahead. And so – I'm sorry. I forgot what your other question was. And then the accessory versus essential component. I believe an accessory, perhaps a silencer, you know, perhaps lowers the decibels. But it isn't necessary to enable the firearm to function. And one may say that about, you know, a Glock. But the MCD is the very thing that allows it, as Your Honor said, to function as a machine gun. Which courts, others have found, to be a pretty – a much more dangerous weapon. That makes sense for the military or if you're in some armed conflict. But if you are a regular homeowner, what do you need? A machine gun that can spray the entire living room or the kitchen, even if you're elderly. How is that not dangerous, unduly dangerous, for purposes of regulation? Well, dangerous, I believe, is a bit of a red herring. Because everything is inherently dangerous. And I believe that courts after Bruin – or, excuse me, this – Well, let's go to Heller. I mean, Heller was pretty clear, was it not, that the Second Amendment protects firearms that are in common usage for lawful purposes. And Heller very specifically said it would be startling to conclude – to extend that to military weapons because that might mean that machine guns are protected. I mean, Heller very specifically said, no, you can't do that. That would lead to allowing machine gun possession. Respectfully, Your Honor, and I think that other courts have said the exact same thing. But what Heller actually – and actually it was Bruin that was talking about – or perhaps it was Heller. Either one, they were talking about Miller. Miller was, if I can – That's right. I mean, the court told us that Miller is still good law and how to understand Miller, which was – which applied to a sawed-off shotgun. It's true the red light has shined, but you're answering my questions. Okay, Mr. Studd. Thank you, Your Honor. But it was very clear, was it not, that the Second Amendment only protects the kinds of weapons that are in common usage for lawful purposes. And that wouldn't be, for example, a machine gun or a sawed-off shotgun. Sawed-off shotgun, no, because at the time, nobody used – or at 1791, nobody used a sawed-off shotgun. They used long barrel guns. Sawed-off shotguns became associated. They didn't use machine guns either. Correct, correct. But, you know, with respect to the question of getting back to Miller as well, I think that for sawed-off shotguns, what Miller was saying is that when you saw off the barrel, it reduces the accuracy and it becomes more dangerous because everything can spew far out and you don't really have great accuracy. Yeah, I don't remember any of that in Heller. But, Heller, to your question, though, Miller was what Heller and Bruen were talking about. Miller dealt with the National Firearms Act, which didn't ban anything. It just placed regulations of tax and registration on it. So all that Miller really could have been read to mean, and I think this is actually what both Heller and Bruen were saying, is that, yes, we can still regulate machine guns or things of that nature, but an outright ban is not appropriate.  You've saved five minutes for rebuttal. Let's hear it from Mr. Silver. Thank you. Good morning, Your Honors. May it please the Court, Assistant United States Attorney Justin Silverberg for the United States. Section 922.0 is constitutional under Bruen's two-step framework, and this Court need not travel far to reach that conclusion. The government rests on two- It's not entirely clear to me that we have to use the two-step framework given what Heller itself said. I will tell you, it's not entirely clear where in the two-step framework this works. You've said it's step one. I think there's pretty good argument that what the Court has said really would suggest that it falls somehow in step two, that it's part of our historical tradition of regulating dangerous and unusual weapons, which would be step two. But I'm not sure it really matters, does it, given the very clear language in Heller? No, Your Honor. Our first point would be it does not matter, and Bruen does not abrogate or change Heller. In fact, it reaffirms and strengthens Heller. So this Court is more than welcome to just look straight to Heller for the answer, which this Court said. I know we didn't cite it in our brief, but which Your Honor wrote about in Dubois, which is nothing was changed by the Bruen framework. So our answer to your question would be yes, you can look directly to Bruen. Sorry, you can look directly to Heller, which explicitly states that weapons that are not in common use for lawful purposes are not covered. But then Bruen does say it is accounting for modern technology, and to your friend on the other side's point, if we accept that all weapons are dangerous, why is it not that a modern weapon, such as a machine gun, should be covered at least under Step 1, recognized as an arm? Yes, Your Honor, it's a great question, and I think it goes back to that it's a two-step process involving an and, dangerous and unusual. Yes, of course, a firearm is dangerous. The government is not going to contend that they're not. However, there's also an unusual element that Heller read into this area of law, and the unusual part goes to various things. It goes to who's using them and what are they used for, and when you look at the history of a machine gun and you trace it back to the founding origins of the machine gun, which is World War I, what happened was after World War I, you had soldiers coming back and taking these weapons from the battlefield and putting them onto the streets of the United States. These were never used by lawfully abiding citizens for self-defense. These have always been, throughout their history, used by criminals to further criminal enterprises, and I think that's the second half that Heller accounts for, which is that it's unusual because of who are using these weapons. Your Honor, I think it makes sense to also talk about what 922 actually does. I think it's important to clarify, for the record, that 922 doesn't ban a class of rifles, it doesn't ban pistols, it doesn't ban shotguns. It bans one mode of fire, that's the automatic fire. You can still own a Glock, the underlying Glock involved in this crime. That was not a felony for Mr. Olsenot to own that Glock. It's not a felony for Mr. Olsenot to own an AR-15. What's a felony and what's unlawful is to own that AR-15 or that Glock that has a conversion device or can be capable of firing automatic weapons. Could you answer the question that I had, which is what exactly is in front of us? So he pled guilty, and it seems like he's got kind of a – I mean, I think he – your friend on the other side proposed kind of two different challenges, but it's all kind of a mush to me as to what exactly is being challenged. I mean, is this a facial challenge? Is there, like, an as-applied aspect to the facial challenge? What do you think was waived by the guilty plea versus what can he contest? Yes, Your Honor, I still believe that the facial challenge is valid, the challenge of machine guns as a whole. But as far as the MCDs, I think this court is pretty clear on unconditional guilty pleas, and when you enter into an unconditional guilty plea, you waive that as-applied challenge. Couldn't he challenge it, though, as applied – in a quasi-applied sense as applied to a citizen who's not previously been a felon? Your Honor, I don't think the distinction for a citizen who has previously been a felon matters here. Congress clearly – Well, that's not the question. Sorry, Your Honor. Those are undisputed facts in the record. Insofar as he's mounting it at least as a quasi-as-applied challenge for those facts. I'm not saying he wins, okay? But he could do it in that sense, couldn't he, as distinguished from a facial challenge. Theoretically, he could, Your Honor, but I still believe he waived it as the facts are before us because of that unconditional guilty plea. And I don't see it here as a quasi. I see it as two different challenges, a facial and then – Yes, so that's – I just want to follow up on that because I – and this is something that we deal with all the time, which is what is a facial challenge versus what is an as-applied challenge because the tests, you know, that you have to establish kind of come in differently. But does it convert this to an as-applied challenge if he just says not a felon and a U.S. citizen? Does that convert it to an as-applied challenge, just to add those aspects to it? Or would you have to add something more like, look, as applied to me, you know, and whatever the characteristics of the defendant are that, you know, are unusual or something like that? How do we view that? I think if it was to be a straight as-applied, as we commonly view them, it would have to be him involving certain characteristics about himself that are specific to the defendant, not just – Right, and so adding the not a felon and a U.S. citizen, does that convert it to an as-applied, just sort of adding those two factors to it? I don't think so, Your Honor. Okay. Why not? To be honest, Your Honor, for me, when it comes back to what 922-0, we have – what 922-0 does, we have to look at what Congress was intending. They were never looking to – Why does that have anything to do with whether it's an as-applied challenge or not? Your Honor, I mean – So we've said a guilty plea doesn't waive a challenge that can be resolved by examining the face of the indictment or the record at the time of the plea without requiring further proceedings. Well, I know from this record that it's uncontested that he's a citizen who has no prior felony conviction, and I think it's reasonable to construe his brief as saying that he's at least challenging it as applied to him as to those facts which are undisputed. Why can't he do that at least? Your Honor, theoretically, he could. Regardless of whether he does or he doesn't do so adequately, I don't think the answer changed to the underlying question, which is whether 922-0 is constitutional or not.  Well, I understood that as whether or not he has a proper argument before us in terms of as-applied. Yes, Your Honor. So you're saying it doesn't matter. Regardless, if we accept that he can bring this challenge as applied before us, he still loses, and therefore, it's not even something for us to wrestle with? You're more than welcome to – I understand what we're welcome to do. I'm asking you what your recommendation is. My recommendation is to not get into the nuance of the as-applied versus the overall constitutional challenge if the court doesn't need to. I think it's important for the court to acknowledge. Well, it's important, isn't it, that we at least – if we're going to do exactly where you're going, okay, then we've got to settle how we understand the permissible as-applied challenge. The facial challenge is easy. We're all in agreement about it. And insofar as we're going to address some kind of as-applied challenge, you would agree, it's uncontested from this record, that he's a citizen with no prior felony conviction? Absolutely, Your Honor. Okay. But I think what my point was, even if the court decides that the as-applied challenge is okay here, even if you get to that inquiry, I think the government still wins for various reasons, first being what the Chief Judge said about Heller, which Heller explicitly states that weapons that are not commonly used by lawfully bind citizens are not covered under the Second Amendment. And then when you look to the various circuits and what they have done on similar problems, in pre-Bruin decisions no court has ever held that 922-0 is unconstitutional. And in post-Bruin decisions you've never seen a circuit hold that 922-0 is unconstitutional. And when you look at the power of these other opinions, granted, yes, they're persuasive, they're not binding on this court because they're other circuits, but when you look at why they're deciding so, they're doing so because it's consistent with what the Supreme Court said in Heller, that bans on dangerous and unusual weapons are consistent with the historical tradition of banning such weapons under the Second Amendment. I also think it's important for the court to look at its opinion in NRA v. Bondi in which this court itself said that dangerous and unusual weapons are not covered by the Second Amendment. So on that issue, that's the second prong? Not clear, Your Honor. I would argue that it's the first prong. I'm happy to explain. Why do you think that comes under the first prong as opposed to the second one? Because when you look at Heller, obviously Heller is way before Bruin, Bruin talks about this two-step framework that I think the chief judge was a little skeptical about. It's a little unclear. Heller never talks about that two-step framework, but it explicitly says the Second Amendment does not reach firearms that are dangerous and unusual. Yeah, it says that, but it also says that that limitation is fairly supported by the historical tradition of prohibiting the carrying of dangerous and unusual weapons. That sounds a lot like Bruin's step two. It does, Your Honor, but because we believe that this was pre-Bruin and because courts relied on the same whole— Yeah, but the thing that complicates that argument for you is that Bruin and Rahimi both say, hey, we're not saying anything contrary to Heller. Everything we're saying is consistent with Heller. That's the way we have to read them. We have to read these as consistent because the Supreme Court has said they're consistent, right? Yes, Your Honor. And when I read the historical tradition of prohibiting the carrying of dangerous and unusual weapons, that sounds a lot like what Bruin then later tells us is the second step. Yes, Your Honor, it does, and like I said, it's not a clear question, and I wish it was for the court. However, whether it's text, history, step one, step two, I think the outcome in this case is clear, which is 922-0 is constitutional because machine guns never have been and never will be weapons used for self-defense by lawfully abiding citizens. And if the court has no further questions, I'll defer the rest of my time. I'm happy to answer more, though. Thank you. Mr. Stoes, you've got five minutes. Thank you, Your Honors. Number one, regarding dangerous and unusual, the dangerous and unusual standard comes from the historical tradition of regulating firearms or weapons. Generally speaking, they were used in going armed situations. There had to be an intent to terrorize the public, is what Blackstone said. And then William Russell, Sir William Russell, followed up and said, oh, and by the way, we're accepting any sort of punishment when you have these sorts of weapons in your house for self-defense. And so when you look at historical analogs, it has to be relevantly similar in both the how and the why. Excuse me. 922-0 is not relevantly similar because it is broader. It bars any sort of possession, whether you're in your home or carrying publicly, and it doesn't require any sort of intent to terrorize the public. With respect to unlawful possession of an AR-15, the irony is that in a current Seventh Circuit case, Barnett v. Raul, the government has taken a position that an AR-15 in a large-capacity magazine should be protected by the Second Amendment. And the reason why I say that's ironic is because here the complaint is that a machine gun can spray thousands of bullets and harm a bunch of innocent people at one time. Well, if you take an AR-15, a large-capacity magazine that's protected by the Second Amendment, and you take one of these legal bump stocks and put it on there, you achieve the same result. By the way, statistically speaking, handguns account for the vast majority of violent crimes in the United States. So statistically speaking, perhaps a machine gun is no less dangerous than a handgun. You want us to now make more dangerous weapons then? Again, I mean, come on. How many handguns are there in the United States? Millions, millions. Probably more than 100 million, right? Machine guns have been banned from lawful possession since 1986, and by your own brief account, even if we include the entire universe of them, many of which, most of which are for law enforcement, we're talking about hundreds of thousands, right? I'm not surprised that handguns cause a lot more problems when there are probably more than 100 million of them. So a couple points. The reason why I led with all of those statistics, I could have kept going, is because Heller and Bruin cautioned against this sort of empirical interest-balancing test to try to determine whether or not something is protected by the Second Amendment. That's all I was just going to say. I think Heller and Bruin, I think Bruin and Rahimi particularly, make our tests sometimes difficult, but the problem for you is that Heller spoke very directly to machine guns, and not only did it say that there's an historical tradition of regulating dangerous and unusual weapons, not only did it say it would be startling to conclude that restrictions on machine guns might be unconstitutional, but it also said weapons that are most useful in military service, M16 rifles and the like, may be banned. But it also said that part of the purpose of the Second Amendment is to preserve a well-regulated militia, and then when it was talking about— What it said was that that prefatory clause, though, gave us the background understanding of why it is that there is a right of the people to keep and bear arms. But it wasn't saying that military weapon, like, just because a weapon is associated with the military, that that is why it's protected under the Second Amendment, because— No, it said the opposite. It said weapons that are most useful in military service may be banned. I'm reading from page 627. I'm trying to find a quote, Your Honor, where the court cited, again, the prefatory clause, and said that if that is to mean anything, then people should at least be able to enable themselves of becoming familiar with war-like firearms. And I think that a machine gun would qualify as a war-like firearm. Excuse me. And so, back to the original point, is that common use, you said hundreds of thousands under Snope B. Brown, both Alito and Thomas, had recognized that hundreds of thousands of stun guns was sufficient to be in common use. And then Bridges, the Second Circuit case my colleague cited, went on to recognize that 65,000 nunchucks, 300,000 tasers, 200— Okay, Mr. Stoes, I think I'm familiar with that part of your brief, and I think we understand your argument, and I appreciate it. All right, thank you. Who asked that you reverse? Thank you. All right, let's move on to the second case.